## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JONATHAN T. CARTER, #R17412, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| SHERRY BENTON, JOHN BALDWIN, and ILLINOIS DEPARTMENT OF CORRECTIONS, | ) ) ) ) ) |
| Defendants. | ) ) |

Case No. 17−cv−1397−SMY

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Jonathan Carter, an inmate at Pontiac Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights that allegedly occurred while he was incarcerated at Menard Correctional Center ("Menard"). In his Complaint, Plaintiff claims that the defendants failed to protect him from violence at the hands of other inmates, in violation of the Eighth Amendment. (Doc. 1). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds that one of Plaintiff's claims merits referral past the threshold stage.

### **The Complaint**

In his Complaint (Doc. 1), Plaintiff makes the following allegations: Plaintiff was approved for protective custody by the Administrative Review Board on March 4, 2013. (Doc. 1, p. 7). On December 20, 2013, Plaintiff "signed out of protective custody because [he] was sexually harassed by male employees and denied equal opportunities as the other inmates." *Id.* Defendant Benton's statement that Plaintiff "was in and out of protective custody would be false. The only time [he] left protective custody was for disciplinary actions which has nothing to do with signing out." *Id.*

On January 10, 2017, Benton conducted a hearing. *Id.* The hearing form attached to Plaintiff's Complaint indicates that the hearing was held to address the denial of Plaintiff's request for placement in protective custody. (Doc. 1-1, p. 8). The form further states that Plaintiff claimed that upon his arrival at Menard, he "was confronted about old issues that

2

transpired [at Menard] in 2012," that on the day he requested protective custody, October 25, 2016, he "was threatened to be moved so to avoid nonsense," and that he feared for his life. *Id.* Plaintiff's statement to the ARB was summarized, in relevant part, as follows:

> When I got down here, I thought things were over. Guys approached me telling me to check back into PC. Four inmates approached me and . . . I reached for my stomach, as I have medical issues, and they reached for a weapon. I mean, I assumed they did. Due to my relationship with 1A, the last time I was here, and allegedly owing money, I need PC. I/M Boyd was the one who threatened me. I spoke to multiple staff at Intel and said the 4CH's and VL's don't want me around.

The form also indicates that Plaintiff was housed at Menard from January 2006 to April 2013, and returned to Menard on October 12, 2016 – less than two weeks before he requested protective custody. *Id.* On the day of the hearing, January 10, 2017, Benton and Baldwin agreed that Plaintiff did not need protective custody. (Doc. 1, p. 7); (Doc. 1-1, p. 8).

Plaintiff was assaulted by three inmates on February 4, 2017. *Id.* His face, eyes, lips, fingers, buttocks, hand, hip, and back were injured. "His middle finger will forever be deformed because the bone and tendon [are] damaged." *Id.* Plaintiff's back was reinjured, and he "will be forever in pain." *Id.* Plaintiff spent 34 days in segregation after this, which could have caused Plaintiff "more injury to [an] illness [he] was suffering from that [Benton] was already aware of."[1] *Id.* Plaintiff attached the Adjustment Committee Final Summary Report from the incident, which included charges against Plaintiff for fighting and disobeying a direct order. (Doc. 1-1, p. 10).

Kent Brookman and Jason Hart were the hearing committee members, and they signed off on the final punishment, which included one month in segregation. *Id.* Plaintiff "tried to explain to her why [he] signed out but [she] cut [him] off and said that issue was not important

---

[1] The Court notes that this injury may be the "medical issues" with his stomach Plaintiff referred to in his statement to the administrative review board. *See* (Doc. 1-1, p. 8).

3

but in all actuality if the harassment never took place this would have never happened and if she was more professional in making decisions [Plaintiff] would have never got hurt." (Doc. 1, p. 7). Plaintiff asserts that "John Baldwin is just as guilty." *Id.*

Plaintiff seeks monetary damages from the defendants for the injuries he sustained in the attack and his placement in segregation after that incident. *Id.*

## **Discussion**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into 3 Counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

> **Count 1 –** Benton and Baldwin failed to protect Plaintiff by failing to grant him protective custody in January 2017, resulting in Plaintiff being attacked by fellow inmates in February 2017, in violation of the Eighth Amendment.
>
> **Count 2 –** Benton and Baldwin violated Plaintiff's due process rights in violation of the Fourteenth Amendment by issuing him a ticket and/or placing him in segregation after he was attacked by other inmates.
>
> **Count 3 –** Benton and Baldwin showed deliberate indifference to Plaintiff's serious medical need involving a stomach issue while he was in segregation in violation of the Eighth Amendment.

As discussed in more detail below, Count 1 will be allowed to proceed past threshold. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

## **Count 1 – Failure to Protect**

"Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). However, not every harm caused by

another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer*, 511 U.S. at 834. In order for a plaintiff to succeed on a claim for failure to protect, he must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id*.; *Pinkston*, 440 F.3d at 889.

A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). "A generalized risk of violence is not enough, for prisons are inherently dangerous places." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (citing *Brown v. Budz*, 398 F.3d 904, 909, 913 (7th Cir. 2005); *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004). Conduct that amounts to negligence or inadvertence is also not enough to state a claim. *Pinkston*, 440 F.3d at 889 (discussing *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)).

Here, a liberal construction of the Complaint and the supporting exhibits supports an Eighth Amendment claim against Benton and Baldwin because they allegedly denied Plaintiff's request to be returned to protective custody after learning of the threats he received from other inmates, and less than a month after Plaintiff's request was denied, he was attacked. Therefore, Count 1 will proceed against Benton and Baldwin.

**Count 2 – Due Process**

It is unclear whether Plaintiff takes issue with the fact that he was given a ticket, placed in segregation, or both, after he was allegedly attacked. Under either interpretation of his Complaint, however, he has failed to implicate Benton and/or Baldwin for the ticket and punishment he received. It is well established that "[f]or constitutional violations under § 1983

5

... a government official is only liable for his or her own misconduct." *E.g.*, *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. June 5, 2015). "This means that to recover damages against a prison official acting in a supervisory role, a § 1983 plaintiff may not rely on a theory of *respondeat superior* and must instead allege that the defendant, through his or her own conduct, has violated the Constitution." *Perez v. Fenoglio,* 792 F.3d 768, 781 (7th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

Plaintiff has not alleged that Benton or Baldwin were aware of the attack when Plaintiff was issued the ticket – much less that they issued him the ticket and chose to punish him with segregation. In fact, the Disciplinary Hearing Report Plaintiff attached to the Complaint shows that Kent Brookman and Jason Hart doled out Plaintiff's punishment, and Justin Dilday wrote his ticket. (Doc. 1-1, p. 10). Because Benton and Baldwin do not appear to have been personally involved in the alleged due process violations, Count 2 will be dismissed without prejudice.

**Count 3 – Deliberate Indifference to Medical Needs**

Deliberate indifference to serious medical needs of inmates may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). In order to state a claim, an inmate must show that: (1) he suffered from an objectively serious medical need; and (2) state officials acted with deliberate indifference to the prisoner's medical need, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Regardless of whether Plaintiff was suffering from a serious medical issue during his time in segregation, he has not pleaded sufficient facts to implicate Benton or Baldwin for being deliberately indifferent to his needs related thereto. As previously noted, it is unclear whether these defendants were even aware that Plaintiff was attacked or placed in segregation before he

had already completed his segregation time and been transferred from Menard. Because Benton and Baldwin do not appear to have been personally involved in denying Plaintiff medical care, Count 3 will be dismissed without prejudice.

### Illinois Department of Corrections

Plaintiff has named the Illinois Department of Corrections ("IDOC") as a defendant. However, Plaintiff's claims against IDOC are barred because it, as a state agency, is not a "person" that may be sued under § 1983. *Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989)); *see also* 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."). the Illinois Department of Corrections will therefore be dismissed from this case with prejudice.

### Pending Motions

Plaintiff has filed Motion for Recruitment of Counsel (Doc. 3) which is hereby **REFERRED** to United States Magistrate Judge Reona J. Daly for a decision.

### Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCEED** against **BENTON** and **BALDWIN**.

**IT IS FURTHER ORDERED** that **COUNTS 2** and **3** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that the **ILLINOIS DEPARTMENT OF**

**CORRECTIONS** is **DISMISSED** with prejudice for the reasons stated herein.

**IT IS FURTHER ORDERED** that as to **COUNT 1**, the Clerk of Court shall prepare for **BENTON** and **BALDWIN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If any defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Reona J. Daly for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Reona J. Daly for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs

under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 31, 2018**

**s/ STACI M. YANDLE**
**U.S. District Judge**