IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JONATHAN T. CARTER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 17-CV-1397-SMY-RJD |
| SHERRY BENTON and JOHN BALDWIN, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is before the Court on the Report and Recommendation ("Report") of United States Magistrate Judge Reona J. Daly (Doc. 58), recommending that the Motion for Summary Judgment filed by Defendants Sherry Benton and John Baldwin (Doc. 52) be granted. Plaintiff Jonathan T. Carter filed a timely objection (Doc. 59). For the following reasons, Judge Daly's Report and Recommendation is **ADOPTED**.

## Background

Carter filed a Complaint pursuant to 42 U.S.C. § 1983, alleging Defendants failed to protect him from other inmates by denying him protective custody while he was incarcerated at Menard Correctional Center ("Menard") on January 10, 2017. He is proceeding on the following claim:

> **Count 1** – Benton and Baldwin failed to protect Plaintiff by failing to grant him protective custody in January 2017, resulting in Plaintiff being attacked by fellow inmates in February 2017, in violation of the Eighth Amendment.

Defendants moved for summary judgment (Doc. 52) to which Carter responded (Doc. 56). Judge Daly issued a Report setting forth the applicable law and her conclusion that Defendants Benton and Baldwin are entitled to summary judgment because there is no evidence that they were aware of

and disregarded a known hazard to Plaintiff's health and safety and no evidence that Baldwin was personally involved in any deprivation (Doc. 58).

**Factual Background**

As Carter does not dispute the material facts set forth in Judge Daly's Report except as to one issue set forth below, they are incorporated herein: When Carter was housed at Menard in January 2013, he was approved for protective custody. At the time, he felt threatened by fellow members of the Four Corner Hustler Security Threat Group ("STG") because he refused to assault a staff member. He was subsequently transferred to Pontiac Correctional Center where he remained in protective custody until he signed himself out in December 2013. After a transfer to Stateville Correctional Center, Carter was transferred back to Menard on October 12, 2016 and placed in general population.

On October 25, 2016, Carter was approached by inmates, including inmate Boyd who was a member of Four Corner Hustler STG, and confronted about the events at Menard in 2013. He checked into protective custody that same day. A few days later, on November 4, 2016, Carter spoke to his counselor about his request, telling her that he had been confronted by three inmates. He did not identify his accosters by name but did state where two of them lived. His counselor, J. Cowan, recommended that protective custody be denied because he "gave no other information as to why he needed pc. He only spoke in general terms about being confronted" (Doc. 53-3, p. 6).

Carter's request for protective custody was reviewed by Intel Officer Spiller who interviewed Carter on November 17, 2016. Spiller likewise found that protective custody should be denied because Carter "provided no verifiable information during the interview to substantiate any valid threats" (*Id*.). Carter was told that he could immediately grieve the denial to the Administrative Review Board ("ARB") (*Id*. p. 7).

On January 10, 2017, Sherry Benton held a hearing on Carter's appeal. She interviewed him, permitted him to read and review documents, and outlined his claim (*Id.* p. 1). She noted that Carter had not declared enemies at Menard, that he had been "in and out of PC", and that he signed himself out of protective custody in 2013. She concluded that he did not provide "sufficient verifiable information" to warrant protective custody (*Id.*). Defendant Baldwin agreed with Benton's conclusion and Carter was placed back in general population on January 17, 2017.

Carter was again confronted by 4 inmates at lunch on February 4, 2017. This time, Darren Gillespie of the Four Corner Hustler STG and three other inmates belonging to the Vice Lords and Black Souls STGs approached him. There is no evidence that Carter reported this encounter. Later that day, in the early evening, he was attacked by 3 inmates including Gillespie, "Little Lord," and inmate Harris. He sought medical care around 5:00 p.m. Despite the medical notes stating otherwise, he suffered swollen eyes from the fight and use of mace, scratches, damage to his right hand, and aggravation of a back injury.

## **Discussion**

Because a timely objection was filed, the undersigned must undertake a de novo review of the Report. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). De novo review requires the Court to consider "specific written objections," Fed.R.Civ.P. 72(b)(2) and (3), and to make a decision "based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). The Court "may accept, reject or modify the magistrate judge's recommended decision." Rule 72(b)(2) and (3). Consistent with these standards, the Court has reviewed Judge Daly's Report de novo.

Carter generally argues that Judge Daly failed to consider the evidence and that she was biased. This Court finds no bias in Judge Daly's Report. The fact that Plaintiff may not agree with Judge Daly's reasoning is not an indication of bias. *Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion.").

Carter also contends that Judge Daly did not consider all of the evidence he presented. Specifically, he argues Benton's interrogatory answers demonstrate that she was aware of the risk to his life two years prior to the assault in 2017. A review of Benton's interrogatory responses does not directly support this contention (Docs. 56, pp. 46-51, and 56-1, pp. 1-9). Rather, the interrogatory responses indicate that Benton signed off on grievances dated 4/13/16, 5/3/16 and 3/6/17, although it is not clear how these grievances are related to this lawsuit. The ARB also received a letter on January 22, 2016 in which Carter indicated that he was being harassed by inmates because he had been labeled a snitch (Doc. 56-2, pp. 10-12). There is no evidence however that Benton was aware of this letter. Nevertheless, Carter argues that she was "placed on notice" of the threat to his life.

In a failure to protect case, a plaintiff must establish that a defendant had "actual knowledge of impending harm." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (per curiam). "Complaints that convey only a generalized, vague, or stale concern about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was in danger." *Gevas v. McLaughlin*, 798 F.3d 475, 480-481 (7th Cir. 2015). Thus, evidence of what Benton may have known in 2015 is insufficient to prove she had actual knowledge of an impending harm in early 2017.

Carter also objects to the distinction Judge Daly made as to the Four Corner Hustler STG and Vice Lords STG. In particular, Judge Daly reasoned Defendants could not have anticipated that Carter was going to be threatened by the Vice Lords STG when he had only previously complained about the Four Corner Hustler STG (Doc. 58, p. 7, citing *Miller v. McBride*, 64 F.Appx. 558, 5612 (7th Cir. 2003)). Carter testified that the Four Corner Hustler are a "branch off the Vice Lords" and that they work in concert with each other (Doc. 53-1, pp. 4, 35-36). As such, he appears to argue that the threat in October 2016 (of which Defendants were aware) and February 2017 (of which Defendants were not aware) were from the same STG or group.

The Eighth Amendment's prohibition against cruel and unusual punishment requires that prison officials "take reasonable measures to guarantee the safety of inmates." *Santiago v. Walls*, 599 F.3d 749, 758 (7th Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (other citations omitted)). To succeed on a failure to protect claim, a plaintiff needs to show: (1) he was incarcerated under conditions posing a substantial risk of serious harm and, (2) that prison officials acted with deliberate indifference to that risk. *Id.*

With respect to the first element, a plaintiff must show not only that he experienced or was exposed to a serious harm, but also that there was a substantial risk beforehand that serious harm might actually occur. *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). The second element requires an inquiry into a defendant's state of mind. *Farmer*, 511 U.S. at 847. Specifically, a prison official may be held liable only if he knows an inmate faces a substantial risk of serious harm and "disregards that risk by failing to take reasonable measures to abate it." *Id.* "In cases involving inmate-on-inmate violence, 'a prisoner normally provides actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety'." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996).

Here, the evidence is that Carter sought protective custody because he was confronted by other inmates and felt threatened. But his request for protective custody was not ignored by Defendants. He was interviewed by at least 3 IDOC personnel. Counselor Cowan interviewed him on November 4, 2016 and concluded that he expressed only a generalized fear of danger. Intel Officer Spiller interviewed him on November 17, 2016 and while acknowledging the events in 2012, also found that he reported unsubstantiated threats of violence. Finally, ARB Chairperson Benton, after outlining his history and allowing him to present evidence, likewise found that the request for protective custody was not warranted. Defendants permitted Carter to remain in protective custody while they interviewed him and considered the threat to his safety. The fact that they ultimately found there was no threat necessitating protective custody does not constitute deliberate indifference. *See Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018) ("A guard who reasonably disbelieves a prisoner's assertion is not liable just because it turns out to have been true."). There is no evidence that Defendants' response was "so inadequate that it amounts to a reckless disregard for the risk." *Giles*, 895 F.3d at 513.

## Conclusion

For the foregoing reasons, Judge Daly's Report and Recommendation is **ADOPTED in its entirety.** Accordingly, Defendants Benton and Baldwin's Motion for Summary Judgment (Doc. 52) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and against Plaintiff and to close this case.

**IT IS SO ORDERED.**

**DATED: November 4, 2019**

**STACI M. YANDLE**
**United States District Judge**